21-3013 U.S. v. Neff. Mr. Fredrickson. Yes, Your Honor. Good morning. May it please the court. My name is Matthew Fredrickson. I'm with the Federal Public Defender's Office and represent Mr. Dennis Neff. The government and Mr. Neff agree that the jury was improperly instructed on constructive possession. The dispute here primarily turns on the third prong of plain error review. While the government argued actual possession, it also presented evidence that creates a reasonable probability that the jury relied on a constructive possession instruction to convict Mr. Neff of possessing the gun on Mr. Heinlein's bed. A strong indication of this reasonable probability is the stark contrast between how the government argued Mr. Neff possessed the drugs and how Mr. Neff possessed the gun. During the closing argument, the government argued that Mr. Neff was caught red-handed with the drugs. That is telltale actual possession. But it could not say the same about possessing the gun. All it could say of the gun was that it was on the bed in Mr. Heinlein's room in Mr. Heinlein's house, specifically his mother's house, equidistant from both Ms. Maddox, Mr. Neff, and Mr. Heinlein. And we knew that Mr. Heinlein and Ms. Maddox's credibility was at issue. So, taking all of that together, in addition to the arguments made by the government that the gun was close, accessible, and in close proximity to Mr. Neff, there is a reasonable probability that the jury turned to that instruction to convict Mr. Neff. This is the easiest path to convicting on possession and it is reasonably likely that the jury did turn to it to convict him. Because it was an erroneous or improper instruction, then this affected a substantial right of Mr. Neff's. Knowing that, it undermined the integrity, fairness, and reputation of the trial because the government was not held to its burden in convicting Mr. Neff of possessing the this court's most recent articulation of actual and constructive possession. Because in Xiong, Mr. Xiong was the mastermind behind an impending, very large drug transaction, involving 33 pounds of methamphetamine for a half million dollars. This is not that case. This is not, there is not an impending criminal or an impending drug transaction that Mr. Neff and his associates were about to be engaged in. This is a casual, recreational use of methamphetamine in Mr. Heinlein's house. Now, in Xiong, they also credited a co-defendant, a witness, Mr. Li, who came in to testify to Mr. Xiong possessing the guns. But that's different than in this case because the jury, or at least the court, could reasonably conclude that the jury credited Mr. Li's testimony because it also found Mr. Xiong guilty of the drug conspiracy. Mr. Li was the only witness who was able to provide the jury with evidence of the drug conspiracy. Now, the opinion, Xiong's opinion, talks about him being the primary witness of the drug conspiracy. But you look at the other witness in that case that could have possibly given evidence of the drug conspiracy, her, E.G.R. is the name. All that witness remembered was a meeting at the strip club with the people who they were going to, oh, we lost Judge Seymour. Hopefully we, but that said, she's still there? Oh, okay, good. Okay, good, good. What was of note there was that Mr. Li was the only witness that was able to give that drug conspiracy testimony because her, all he could say was that they went to the strip club, he met these people, but he didn't remember what they spoke about. So the court was able to conclude that the jury had credited Mr. Li's testimony and therefore was able to credit the other portion of Mr. Li's testimony that put the guns in Mr. Xiong's hand. In addition to that, we have the government's argument being of actual possession, but the government in that case also correctly instructed the jury of constructive possession on their PowerPoint slide during closing arguments, which showed that they required that intent piece of to convict on constructive possession. It's different than the case here, where not only was the defense argument primarily that Heinlein and Ms. Maddox were not credible, but also that the jury didn't need Heinlein or Maddox's testimony to convict Mr. Neff of possessing the drugs. There was the additional corroborating evidence of having found the drugs on Mr. Neff months later. And the drug conspiracy charge was dismissed against Mr. Neff on morning of trial. Finally, it's important to note that in Xiong, what we have here is guns, the shotgun in the car where Mr. Neff was, being readily accessible to Mr. Xiong, but this gun in this context not being readily accessible to everyone in that room. With that, Xiong is distinguishable from this case. This case follows more closely with a string of published cases, Simpson, Samora, Benford, which have stated that this is plain error. It affects the substantial rights of the defendant to not instruct the jury in this way, and that undermined the fairness integrity of the trial. And if there are no questions, I will reserve the remainder of my time for rebuttal. Thank you. May it please the court, Natasha Harnell-Davis on behalf of the United States. Mr. Neff cannot meet his burden on prong three of the plain error test for two reasons. First, the government's theory of the case and the evidence that it presented to the jury established that Mr. Neff actually possessed the gun. Second, even if the jury had considered constructive possession, and the record does not suggest that it did, the government still presented overwhelming evidence that Mr. Neff intended to control the gun. Starting with the evidence that Mr. Neff actually possessed the gun, Mr. Haneline testified that Mr. Neff took the gun from his person and set it on the bed. That's at the record, excuse me, that's volume three of the record, 382. His testimony establishes that Mr. Neff handled the gun for a week, and that's all that is required to show actual possession under Samora. Other evidence in the case corroborated Mr. Haneline's testimony that comes in in the form of the body camera footage, which is in the government's supplemental appendix. If the court has not yet viewed it, I would strongly encourage the court to do so, in part because it shows how close the gun was to Mr. Neff specifically. Ms. Maddock and Ms. Seacrest's testimony is also generally consistent with Mr. Haneline's regarding the evening. At the heart of Mr. Neff's appeal is a request for this court to second-guess the jury's decision to credit Mr. Haneline. The court should decline that invitation for two reasons. One is a factual and one is a legal matter. Starting with the legal matter, it is for the jury to make a credibility determination, and it's not for this court to second-guess that determination. This court has said in Zhang that it will not find testimony uncredible as a matter of law unless the witness testified to events that the witness could not have seen or physically impossible. Neither of those circumstances apply here. That's not the test here, is it? The test here is whether the absence of an instruction might have prejudiced the defendant. And these are not real credible people. They are flawed witnesses, certainly, Your Honor. I think that's the technical term, right? They are flawed witnesses, but it is clear that the jury did credit them because they convicted Mr. Neff on count two of possessing the drugs that were found in the residence on that day, November 27th, that were found in the closet in the room. So those drugs were even further removed from the gun where Mr. Neff is seen sitting. I do want to flag just at this moment briefly that I think opposing counsel has muddled counts two and counts five. Count five was the February conviction where the drugs were found on Mr. Neff's person, and that's what the government referred to as red-handed. But if you look at page 659 of the third volume, you'll see that the government's theory on counts two, three, and four was actual possession. I also want to flag that defense counsel in this case staked his case on the jury crediting Mr. Maddock, excuse me, Ms. Maddock and Mr. Hainline. He told the jury, quote, and this is in his closing, you have to believe everything that Hainline and Maddock told you in order to pin the gun on my client. So when the jury chose to credit those witnesses, it is, I think, strong evidence that the jury would have convicted or did convict on actual possession. You also have the case, that both parties called the jury's attention to Mr. Neff's possession of the gun, actual possession. The government's theory in closing was that Mr. Neff had actually possessed the gun by bringing it into the house, that he took it off his person. The government emphasized that the gun was easily concealed and was found under Mr. Neff's coat. He repeatedly says at 659, 665, 669, 685, that Mr. Neff brought the gun into the house to protect his drugs. And I think the drugs are an important part of this case and it explains why Mr. Neff had the gun with him on that day. He was traveling from Holton, excuse me, he was traveling from Topeka to Holton, which is about a 30-minute drive. He was carrying 73.8 grams of methamphetamine with him. That's not really a nice evening out with friends amount of meth. That is a person who's dealing methamphetamine. You also have Neff's trial counsel calling the jury's attention to actual possession. During cross-examination, he twice asks Mr. Haneline about placing the gun on the bed. And then during closing on count three, he tells the jury that the two witnesses testified that he took the gun out, that he just had it with him, which again was calling the jury's attention to actual possession. I think if you do a word search through the closing arguments, you'll see that constructive possession is not raised. The government does not suggest that someone else possessed the gun. It always has the theory that Mr. Neff possessed the gun. Turning briefly to constructive possession, even if the jury had considered it, Mr. Neff still cannot meet his burden because the government presented overwhelming evidence that Mr. Neff intended to exercise control over the gun. You have the testimony from Mr. Haneline that he took the that Mr. Neff told him he purchased the gun in order to prevent another drug rip-off, and that Mr. Neff had previously fired the gun at his girlfriend's head. You have a testimony from Ms. Maddox that she saw Mr. Neff with the gun that day. You have the fact that, as the court and the jury saw in the government's body camera footage exhibit, that Ms... Insofar as you're relying on the testimony of those two witnesses, they're not just flawed. They also have an interest in blaming him, so they're not held responsible for this. Yes. That seems to me to be a really tough hill for you to climb. I don't believe it is, Your Honor. If you look at the Zhang case, this court said that a conviction may stand on the uncorroborated testimony of an accomplice. Here... The issue isn't whether the conviction could stand. The issue is whether the defendant was prejudiced by an improper instruction, and that's different. The jury may well have believed everything they said, and maybe you're right. You made an interesting argument about what was wrong. When you look at cases like Falsi, which is an unpublished case, and you look at Zhang, both of which I think are on all fours with this case, where there was an error in the constructive possession context, the court has said that when the government presents a theory of actual possession and presents evidence of actual possession, even if that evidence comes through in the form of a flawed witness's testimony, the jury can still credit that burden to show that the error affected his substantial rights. And I don't believe that he can show that here based on the evidence that the government presented of actual possession and of the overwhelming intent. In addition to what I was previously listing, the jury heard testimony from the DEA agent that drug traffickers carry guns to protect their drugs and their cash. That makes this case very similar to Martina's. And that Mr. Neff had the 73.8 grams and was Ms. Sechrest, who was a less flawed witness, testified that she had never seen a gun in her home before Mr. Neff's arrival. And you also have the ammunition and the holster that are found in Mr. Neff's residence in February. Mr. Neff seems to assume that he's entitled to an automatic reversal when he can show that there was a joint occupancy case as well as an error in the constructive possession instruction. That's simply incorrect. As you can see in this court's cases, Jean, Martina's, Campbell, and Simpson's specifically count two and five, which is the counts where the gun was found in the garage as opposed to the basement. Indeed, the court considers it's a very fact-specific inquiry. So in cases like Simpson, Benford, Jankis, and Samora, the court goes through and considers the color of the bag, whether the gun was loaded, the proximity and use during a drug deal, the dates when someone testified that the person saw the gun handled. It's not an automatic reversal. Mr. Neff's theory on appeal seems to be that the jury could have determined that he knew of the gun but did not intend to possess it. It's problematic for at least two reasons. First, Mr. Neff in that implicitly concedes that he knew of the gun, but the evidence that supports knowledge also supports his intent to exercise control over it. Second, his new theory, which was not the theory that he presented to the jury, relies on an unstated assumption that someone else had to put the gun on the bed. All the people associated with the house testified that the gun was not theirs. Mr. Haneline testifies it's not his. Ms. Maddock testifies it's not hers. Ms. Sechrest testifies that she had never seen a gun in her house before. And Ms. Childs testifies that her mother and her brother didn't have a gun in the house. So there's nothing to indicate that someone else brought the generally aware of it in front of him but did not intend to possess it. Everything in this case points to Mr. Neff being the person to bring the gun into the house, set it on the bed, and intend to use it in association with his drug deal. I do briefly just want to touch on the way in which this case is different from some of the other published cases. Here there is testimony that Mr. Haneline saw Mr. Neff handle the gun that day, which is different from other cases where a witness testified that they saw a defendant handle a gun but not during the indictment period. You also have the association with drug trafficking, which provides the why as to why Mr. Neff possessed the gun. As I've mentioned, the evidence does not suggest that it belonged to anyone else. And the party's theories in this case were that Mr. Neff actually possessed the gun. Unless the court has any further questions, I would ask this court to affirm. Thank you, counsel. Thank you. I would like to address about three points that my opposing counsel made. The first is that the motivation for Mr. Neff to own a gun is a motivation shared by Mr. Haneline, as well as Ms. Sechrest testified. She believed he was dealing drugs out of his room. He was at least dispersing drugs. So the same motivation could apply to Mr. Haneline. Now, and also leading into that dovetails with Judge Hart's comment about these witnesses do have a lot to lose. They have a motivation to put the gun in Mr. Neff's hands, which is exactly what the defense was arguing and that the prosecutor had to deal with. When we're looking at cases all the way back to Simpson, that court relies on Lee to say that the informant could have been discredited by the jury because of the defense had argued or impeached that witness. Then you go through the string following up to Zhang, and we know conclusively, or at least there's a strong probability that the jury did rely on Lee because of the drug conspiracy that only Lee could have provided evidence of. Again, we're not confusing the February and December drug transactions or finding the drugs on Mr. Neff red-handed on that later date is also facts that the jury was considering. It was there in front of them, and so it's very different. It stands in pretty stark contrast to what the government was forced to argue in this case, which was his actual possession. But, jury, if you don't believe that, it was in close proximity to Mr. Neff. He had access to it. It's on the bed right in front of him. But when you're looking at 3A and 6F, those pictures that show what was on the bed when the cops returned, now Mr. Neff is not in the house. It's on the bed in Mr. Heinlein's room, in Ms. Seacrest's house. There's a variety of objects there that are of unclear origin, and I think the most telling is the phone. We know that Mr. Neff had his phone on his person because he used that to find a place to stay after he left the Heinlein house, but there's also a phone on that bed. And then you also have, for example, the pipe, which was on Mr. Heinlein's bed. They had been using it to smoke meth. You have cigarettes. You have a whole slew of other objects of unclear origin on somebody else's bed. In Zhang, what we have is the mastermind behind the drug deal, distributing the drugs, preparing almost exclusive control over the shotgun behind the driver's seat. He's in the passenger seat, and he has almost exclusive control and intent to use that gun, and that's how it's positioned, and that's how the court was able to come to that conclusion. Here you have Mr. Heinlein's motivation to also have a gun, given his drug involvement, and Ms. Maddox as well. She's involved in all of this. So I don't think it's fair to say that he has the only clear intent to use this gun. He has the only clear intent to own this gun. Everyone is out to save themselves, and so that's why the jury could have chosen the path of least resistance, which was to convict on constructive possession, and without that intent element, the burden was lesser. The barrier to conviction was lesser, and that's why. Do you agree that the defense counsel argued to the jury that you have to believe everything these flawed witnesses said to convict? Did defense counsel say that? Yes, I do believe that they did do that, but the jury doesn't have to believe all of the testimony. The jury can believe part of somebody else's testimony, part of this witness's testimony, and they don't really have legs to stand on with Ms. Maddox. She was very wishy-washy. She equivocated on the gun. The last thing she said is she'd never seen the gun in Mr. Neff's hands. She had said maybe she'd seen it with him, but it was never in his hands, so that would cut the jury off from thinking actual possession with regard to that testimony. But Haneline was clear. Yes, Haneline was clear, but again, he has a lot to lose. He's in his mother's house. His mother didn't know what he was doing, thought he was selling drugs. Just as much motivation to cast doubt on that and put that ball in Mr. Neff's court. What about the government's argument that the jury must have believed Haneline and Maddox because of how they convicted him on the possession counts? The jury didn't need them to convict on the possession counts because of their corroborating February red-handed evidence, unlike in Zhang where they did need Lee to convict of that conspiracy. And what about the defense counsel's statement that according, when he tells the jury in closing, according to Haneline and Maddox, he's talking about the two witnesses, Neff took the gun out and he put it on the bed. He just had it with him. It seems to be almost like his own acceptance of that testimony. You know, I think that is important to note because of a couple different reasons. It's embracing that gun and the presence of that gun, but... And his possession of that gun. But what the police actually found when they came into the house was the gun on the bed, the actual physical location of it. And that's why even the government has to say, if you believe the gun is Ms. Maddox, if you believe that this is, you know, proximity, accessibility, that's that alternative argument that the government is saying, jury, you decide, and they benefited from that lower standard there in that constructive possession instruction. What do you say about, what do you say, counsel, about the government's point that constructive possession wasn't even argued in closing? Two things. Specifically, that there was still evidence that the jury could rely upon to find constructive possession. And so this is similar in a sense to the reasonable probability standard that the, that this court is relying upon, which is whether or not there's a reasonable probability that the jury could have relied on the whole amalgamation of evidence, the overall strength of the government's case. So even though it was probably the government's primary theory, it also presented evidence that could lead the jury to conclude on that constructive possession. And there's that reasonable probability that is the standard this court has to rely upon. So with that, I would ask that this court vacate those convictions and remand the case for a new trial. Thank you. Thank you. Case is submitted.